# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| ROSETTA JENNINGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-663-W-DGK |
| | ) | |
| BONUS BUILDING CARE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This case arises from allegations that Defendants, participants in a nationwide cleaning franchising business, acted in concert to defraud and overcharge Plaintiffs, individuals who purchased these franchises. Plaintiffs contend this course of conduct constitutes racketeering punishable under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

Fifty-five Defendants ("Movants")[1] have filed a motion to dismiss all counts under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 76). Finding that the Court has jurisdiction over all Movants but that the Complaint fails to establish any claim against any Movant, the Court GRANTS the motion.

## Factual Background

In deciding this motion, the Court takes the following facts in the Complaint as true:

Movants are involved in a nationwide cleaning franchise business known colloquially as Bonus Building Care ("Bonus"). Movants include franchisors, intermediary "master

---

[1] The Court dismissed a fifty-sixth moving Defendant, Bonus Building Care of Memphis, Inc., on October 21, 2013 (Doc. 101).

franchisees," and various individuals employed by both. Movant Bonus Building Care, Inc. was the franchisor and top of the Bonus system from 1996 to 1999, and its successor Movant Bonus of America, Inc. was the franchisor for the system from 1999 onward. According to their affidavits, all Movants operate in the United States, and at least one, Bonus USA, LLC, operates in Kansas City, Missouri. The four Plaintiffs[2] are "unit franchisees," individuals who purchased and operated Bonus cleaning franchises.

The dispute here concerns Movants' allegedly fraudulent and deceptive business practices. Plaintiffs allege that Movants misrepresented both the franchises' prospects for financial success as well as the degree of control that the unit franchisees would have over their franchises. Movants did so by distributing misleading franchise disclosure documents ("FDDs") to Plaintiffs when Plaintiffs were prospective investors. Movants also spread similarly misleading information to third parties like *Entrepreneur* magazine, which published favorable reviews of the Bonus system based on that information.

Once Plaintiffs had contracted to run Bonus franchises, Movants then cheated them by oversaturating markets with Bonus franchises, removing franchisees from service accounts and replacing them with other franchisees for insubstantial reasons (a practice that Plaintiffs call "churning"), underpricing Plaintiffs' service work, and capriciously charging various inflated fees.

Plaintiffs commenced this action by filing the two-count Complaint on July 3, 2013, seeking class certification. Count I alleges that Defendants conducted a RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Count II alleges that Defendants conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d).

---

[2] Plaintiffs are Rosetta Jennings, Marcus Crosdale, Mike Hughes, and Jessie Binion, each of whom operated a Bonus franchise in a different state. Hughes resides in Kansas, and Crosdale resides in Missouri.

Movants have filed this motion to dismiss. Forty-three Movants challenge whether the Court may exercise personal jurisdiction over them, and all fifty-five Movants challenge whether the Complaint states claims upon which relief may be granted.

**Discussion**

**I. Personal jurisdiction exists over all Movants because RICO provides for nationwide service of process and all Movants have minimum contacts with the United States.**

The first question before the Court is whether it has personal jurisdiction over the forty-three Movants challenging that point. "Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks omitted). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving parties—here, Plaintiffs—need only make a prima facie showing of jurisdiction. *Id.* Plaintiffs may make their proof by not only the pleadings, but also any attached affidavits and exhibits. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004). When the court relies on pleadings and affidavits, it must look at the facts in the light most favorable to the Plaintiffs and resolve all factual conflicts in favor of Plaintiffs. *Viasystems, Inc.*, 646 F.3d at 592.

In exercising personal jurisdiction, the Court must abide by statutory and constitutional limits. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 103–04 (1987). The Federal Rules of Civil Procedure require a defendant to be amenable to service of summons, and the Fifth Amendment requires the defendant to have a sufficiently strong relationship with the forum. *Id.* The Court will examine whether Plaintiffs satisfy each requirement.

3

**A. Each Movant is amenable to service of summons.**

Federal Rule of Civil Procedure 4, which governs service of process in federal actions, permits personal jurisdiction when (1) service is proper and (2) a federal statute authorizes the exercise of personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(C). Here, Movants have raised no objection to the propriety of service. The Court thus must examine whether a federal statute authorizes personal jurisdiction over Movants.

A federal statute that provides for nationwide service of process serves as a statutory basis for personal jurisdiction. *See In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc) (holding that a bankruptcy rule which authorized nationwide service of process established statutory personal jurisdiction). The Complaint asserts two claims under RICO. A subsection of the RICO statute, 18 U.S.C. § 1965(a), allows Plaintiffs to institute a RICO action against any Defendant in the district where it "is found" or "transacts [its] affairs."[3] Once the RICO action has been instituted, § 1965 authorizes Plaintiffs to effect service on all other Defendants, even those over which the court would not otherwise have statutory personal jurisdiction.[4] Thus, § 1965 potentially satisfies Rule 4(k)(1)(C).

---

[3] 18 U.S.C. § 1965 states:
   (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
   (b) In any [civil RICO action] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
   (c) [Relating to service of subpoenas on witnesses.]
   (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

[4] Although § 1965 as a whole confers nationwide jurisdiction, there is considerable debate over which of subsections (b) and (d) is the service of process provision and which is the venue provision. *Compare, e.g., Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 492–93 (S.D. Iowa 2007) (finding the most natural reading of the statute to be that subsection (b) allows for service of process), *with Gatz v. Ponsoldt*, 271 F. Supp. 2d 1143, 1153 (D. Neb. 2003) (finding that to be the case with subsection (d)). The distinction matters because § 1965(b) imposes an additional requirement that the court find the "ends of justice" are met. Here, however, Movants do not meaningfully challenge Plaintiffs'

Here, Movant Bonus USA, LLC operated its cleaning franchise in Kansas City, Missouri. Thus, at least one Movant transacted its affairs in the Western District of Missouri. Because Plaintiffs permissibly instituted an action against this Movant, *see id.* § 1965(a), Plaintiffs then could serve process on all other Movants. *See id.* §§ 1965(b), (d). The Court finds that there is a statutory authorization for the exercise of personal jurisdiction.

**B. The Constitution permits exercise of specific personal jurisdiction over Movants.**

The Court must next ask whether the exercise of personal jurisdiction here would offend the Due Process Clause of the Fifth Amendment. Personal jurisdiction can be general or specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction exists over a defendant who is essentially at home in the forum, and may be used to hear all types of claims. *Id.* Specific jurisdiction exists when the defendant's contacts with the forum are more attenuated, and may be used to hear only cases where the injury is related to those contacts. *Id.* Because the Court finds that general jurisdiction exists over all Movants, it need not examine whether specific jurisdiction applies.

A federal court may exercise general personal jurisdiction over a defendant in two ways that are relevant here. First, a defendant is subject to general jurisdiction if served process while within the forum. *Burnham v. Superior Court of Cal., Cnty. of Marin*, 495 U.S. 604, 619 (1990) (plurality opinion) ("The short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define . . . due process."). In federal court, the "forum" is the federal system of government.

---

invocation of § 1965(d), nor suggest that the ends of justice have not been met. Thus, Rule 4(k)(1)(C) is satisfied regardless of whether subsection (b) or (d) applies.

That is, due process of law requires only that the defendant has sufficient contacts with the *United States*, not the state in which the district court sits.[5] *In re Fed. Fountain*, 165 F.3d at 601.

Second, a court may acquire general jurisdiction over a defendant whose "affiliations with the [forum] are so continuous and systematic as to render them essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Id.* at 2853. An individual's domicile is the "place at which a person has been physically present and that the person regards as home." Black's Law Dictionary 523 (8th ed. 2004); *cf. Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (using a similar definition of "domicile" to interpret the Indian Child Welfare Act). For a corporation, the paradigm forum is "one in which the corporation is fairly regarded as at home," such as its place of incorporation and principal place of business. *Daimler AG*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853–54). "By contrast, those who live or operate primarily outside [the forum] have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality opinion).

Here, forty-three Movants contest this Court's jurisdiction over them.[6] While physically present in the United States, Plaintiffs served process on twenty-nine of these Movants.[7]

---

[5] Movants are incorrect that the Court must here examine their connection to the State of Missouri. Such analysis is required only upon implication of the Fourteenth Amendment. In federal court, this would only happen if Rule 4(k)(1)(A) applied, in which case the court would have to analyze whether the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *See, e.g.*, *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (employing a state-focused Fourteenth Amendment analysis even where a federal question presented in federal court, because Rule 4(k)(1)(A) was the applicable service of process provision). As explained earlier, the instant case falls into Rule 4(k)(1)(C), which carries no such requirement that the federal court analyze personal jurisdiction from the perspective of a state court. As such, the Fifth Amendment is the relevant constitutional stricture, and the Court looks at Movants' connection with the United States as a whole.

[6] The twelve other Movants have not moved for dismissal under Rule 12(b)(2) and so have submitted to this Court's jurisdiction over them. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982) (holding that personal jurisdiction may be waived); Fed. R. Civ. P. 12(h)(1) (considering personal

Because those Movants were served in this forum, the Court has personal jurisdiction over each of them. *See Burnham*, 495 U.S. at 619.

Eleven of the remaining Movants are individuals.[8] According to their affidavits and the Complaint, each resides and works in the United States. Viewing these materials in the light most favorable to Plaintiffs, as it must, the Court finds that each of these Movants is physically present and sufficiently at home to have established domicile in the United States. *See Goodyear*, 131 S. Ct. at 2853; *In re Fed. Fountain*, 165 F.3d at 602 ("In this case, [the defendant] is concededly present in the territory of the United States, and the courts of the United States may therefore legally exercise the authority to proceed to judgment against it . . . ."). Plaintiffs have made a prima facie case for personal jurisdiction, and the Court has personal jurisdiction over these eleven Movants.

That leaves three Movants, all corporate entities.[9] Each was formed in the United States, and has its principal place of business in the United States. These being the paradigm forums where a business entity is essentially at home, the Court finds general jurisdiction for these Movants. *See Daimler AG*, 131 S. Ct. at 760.

Therefore, all Movants have submitted to the jurisdiction of this Court. The Court denies the motion to dismiss the Complaint on jurisdictional grounds.

---

jurisdiction objections to be waived if not brought at the same time as a 12(b)(6) motion to dismiss).

[7] These Movants are Denise Burger; Tammy Cantrell; Jessica Dibble; Melissa Evers; John Feagin; Kevin Fox; John Garcia; Grove Partners of Birmingham, LLC; Grove Partners of Memphis, LLC; Grove Partners of Miami, LLC; Grove Partners of Nashville, LLC; Jennifer Harper; Gene Hollencamp; JCCW Enterprises, LLC; JDM Ventures, Inc.; Teresa Keeney; Chris Kincade; Chuck Kincade; Earl Kincade; The Kincade Group, LLC; The Kincade Group – Founder, Inc.; David Nall; Profitnall, Inc.; Liz Reyes; Eugene Ryan; RYCO Enterprises; Mike Shepherd; TAMK Enterprises; and Chad Weaver.

[8] These Movants are Tom Benoit; Jarrod Coates; Lamont Gary; Rhonda Hamburg; Chris B. Scheppler; Justin Simmering; Jeanne Tays; Tim Tays; Diane Thomas; Dawn Wood; and Robert Young.

[9] These Movants are Bonus Building Care of Knoxville, LLC; Reardon Management, LLC; and TRT Enterprises, LLC.

## II. Plaintiffs fail to state a claim for violations of RICO under Counts I or II.

### A. The Complaint's RICO claims face scrutiny under both Rules 12(b)(6) and 9(b).

Next, all Movants seek to dismiss the Complaint under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. A complaint must satisfy two general conditions to survive a Rule 12(b)(6) motion. First, it must "contain sufficient factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

Second, the complaint must state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plaintiffs need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in Plaintiffs' favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

Where a plaintiff alleges fraud, a heightened standard applies and the complaint must plead that factual basis with particularity. Fed. R. Civ. P. 9(b). The particularity requirements of Rule 9(b) apply to allegations of mail fraud and wire fraud when, as here, they are used as predicate acts for a RICO claim. *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995). This means that the complaint will need to identify "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d

8

1053, 1062 (8th Cir. 1982). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (internal quotation marks omitted). Conclusory allegations of fraud and deception on the part of the defendant will not suffice. *Commercial Prop. Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

With these pleading standards in mind, the Court turns to what exactly the Complaint contends the Movants have done wrong. Both counts charge violations of RICO. The RICO Act provides a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). Although Congress enacted RICO chiefly to combat the infiltration of legitimate businesses by organized crime, courts have permitted civil RICO actions for activity far afield from organized crime because of the wide breadth of the statute's plain language. *See, e.g.*, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) (allowing a RICO complaint to proceed against anti-abortion groups for using intimidation and threats to shut down abortion clinics and persuade women not to have abortions); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244 (1989) (rejecting an "argument for reading an organized crime limitation into" RICO).

RICO prohibits four classes of activities as laid out in 18 U.S.C. § 1962. Subsections (a) and (b) involve the use of racketeering to invest in an enterprise and to acquire control over an enterprise, respectively, and are not at issue in this case. Subsection (c), the basis for Count I, creates liability for participating in an enterprise engaged in a pattern of racketeering activity. Finally, subsection (d), the basis for Count II, prohibits conspiring to violate subsections (a), (b), or (c). Section 1964(c) gives private parties a cause of action for violations of § 1962.

The Court now turns to whether the Complaint has properly stated a claim under

§§ 1962(c) and (d).

## B. Plaintiffs fail to plead sufficient facts to establish Count I, a § 1962(c) civil RICO claim.

Count I of the Complaint alleges a violation of RICO under 18 U.S.C. § 1962(c). To state a claim under this subsection, a plaintiff must establish five elements: "(1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003) (construing 18 U.S.C. § 1962(c)). Further, the plaintiff must show that (5) a defendant's RICO violation was the proximate cause of the plaintiff's injury. *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 8–9 (2010) (construing 18 U.S.C. § 1964(c)).

### 1. Plaintiffs have not pleaded a proper RICO enterprise.

The first element to a § 1962(c) claim is that an enterprise existed. An "enterprise" includes natural and business entities as well as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The association-in-fact must have some sort of structure, including "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The enterprise must further be [4] distinct from the defendant and from the pattern of racketeering. *Crest Constr. II*, 660 F.3d at 354–55. With these principles in mind, the Court analyzes the structure of the purported enterprise.

### a. The purported enterprise has a purpose.

The Complaint alleges that the Bonus system existed to defraud consumers by establishing a pyramid scheme, churning franchisees, charging erroneous or excessive fees, and disregarding its obligations under the unit franchise agreements. This suffices to allege a purpose.

### b. Only some Movants are related to the enterprise.

The Complaint does not properly allege a relationship among certain Movants associated with this purported enterprise. The Complaint does not ascribe *any* conduct, much less conduct that would indicate a relationship to other enterprise associates, to nineteen Movants. For example, the only mention of Movant Tom Benoit ("Benoit") comes in Paragraph 37 of the Complaint, which asserts that Benoit was an "employee/representative" of Movants Chuck Kincade and Chris Kincade. This allegation merely states Benoit's legitimate employment status, and is thus insufficient for the Court to draw any favorable inferences regarding Benoit's participation in an enterprise. Plaintiff's claims against nineteen Movants fail for the same reason.[10]

Because the Complaint's factual allegations are not sufficiently detailed to allow the Court to determine what relationship the purported enterprise's associates had with each other, the Complaint fails to allege a RICO enterprise as to these nineteen Movants.

### c. The enterprise had sufficient duration.

The Complaint properly alleges that the enterprise lasted long enough for the enterprise associates to participate in the enterprise's affairs through the pattern of racketeering. Plaintiffs

---

[10] These Movants are: Tom Benoit; Tammy Cantrell; Jessica Dibble; Melissa Evers; Kevin Fox; Angel Garcia; Jaime Garcia; Lamont Gary; Rhonda Hamburg; Jennifer Harper; Richard Hayward; Teresa Keeney; Earl Kincade; Liz Reyes; Chris Scheppler; Kim White; Perry White; Dawn Wood; and Robert Young.

date the start of the enterprise to 1996, almost seventeen years before the Complaint was filed. The Court may plausibly infer than seventeen years is long enough for associates to form an enterprise and execute its mission. *See also, e.g.*, *Raineri Constr., LLC v. Taylor*, No. 4:12-CV-2297 (CEJ), 2014 WL 348632, at *5 (E.D. Mo. Jan. 31, 2014) (finding that a time period of about one year was per se sufficient to satisfy this prong). Therefore, the Court finds that enterprise was sufficiently long-lasting.

### d. The enterprise is not distinct from some Movants and from the pattern of racketeering activity.

The enterprise cannot simply be the Movant by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Movants Bonus Building Care and Bonus of America cannot be part of any enterprise because they are merely the enterprise by a different name. The Complaint alleges that Movants perpetrated their scheme through the structure of those two Movants, but there are no allegations that RICO activity took place outside the structure of these corporations.[11] Thus, these two Movants cannot be part of any enterprise.

The enterprise must be more than just the pattern of racketeering activity. In other words, the court "must determine if the enterprise would still exist were the predicate acts removed from the equation." *Crest Constr. II*, 660 F.3d at 354–55. The Complaint does not allege that the association-in-fact had a structure distinct from the pattern of racketeering activity. The Bonus system operated through franchisors Bonus Building Care and Bonus of America as the regular course of their business. Bonus's fundamental reason for existence was to perpetrate a fraudulent franchising scheme. No reasonable inference from the Complaint establishes that the

---

[11] Although these Movants are separate corporations, the Complaint notes that Bonus of America succeeded Bonus Building Care in 1999. Neither Movant operated at the same time as the other. Thus, Bonus Building Care was the enterprise by a different name from 1996–99, and Bonus of America was the enterprise by a different name from 1999–2013.

purported enterprise did anything beyond committing racketeering activity. *See Bennett*, 685 F.2d at 1060–61 (collecting cases involving legitimate business that served as *fronts* for racketeering activity). Because the enterprise would not exist if the predicate acts of mail and wire fraud were "removed from the equation," the enterprise fails for all Movants for being indistinct from the pattern of racketeering activity. *Crest Constr. II*, 660 F.3d at 354–55.

On the whole, the Complaint fails to establish that a RICO enterprise existed with regard to any Movant. Thus, the Complaint fails to establish the first element of § 1962(c).

### 2. Plaintiffs have not properly pleaded that each Movant committed conduct in association with an enterprise.

The second element of a § 1962(c) claim requires a plaintiff to show that the defendants acted in association with the enterprise. This means that the defendant "participated in the operation or management" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Plaintiffs must further establish that each defendant performed some conduct. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027–28 (8th Cir. 2008).

Again, the Complaint fails to allege *any* action, much less any participation in the operation or management of an enterprise, with regard to nineteen individual Movants.[12] Further, because the Court finds no RICO enterprise existed, every other Movant necessarily could not have operated or managed that enterprise. The Complaint fails to satisfy the second element of § 1962(c).

### 3. Plaintiffs have not properly pleaded that each Movant participated in predicate acts of racketeering.

The third element of a § 1962(c) claim is that each defendant engaged in a predicate act of racketeering activity. Predicate acts of racketeering activity include mail fraud and wire fraud.

---

[12] *See supra* note 10.

18 U.S.C. § 1961(1)(B).  Mail fraud and wire fraud occur when a person "devise[s] or intend[s] to devise any scheme or artifice to defraud" and uses the Postal Service or wire communications, respectively, to execute or attempt to execute that scheme.  *Id.* §§ 1341, 1343.  Plaintiffs do not need to show that they relied on the fraud.  *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 648–49 (2008).  As this element implicates allegations of fraud, the Complaint must meet the more exacting standard of Rule 9(b).  *Bennett*, 685 F.2d at 1062.

Here, the Complaint alleges that Defendants used the mail and wires in three ways to fraudulently misrepresent the true nature of their scheme to Plaintiffs.  As explained below, these allegations do not comport with Rule 9(b).

### a. Plaintiffs do not allege with particularity that by releasing an FDD, Bonus of America committed mail or wire fraud.

The Complaint alleges that Bonus of America omitted material information on its franchise disclosure documents ("FDDs") concerning its prior business experience, franchises' prospective financial performance, and its current and former franchisees.  Bonus of America then distributed these false and misleading FDDs to the Master Franchisees through the mail system "and/or" through interstate wire, with the intention that the Master Franchisees would pass the FDDs along to Plaintiffs and induce Plaintiffs' investments.

While this establishes the "what" of the purported fraud, and identifies one Movant—Bonus of America—as a "who," it is silent as to the "where," when," and "how."  *See Summerhill*, 637 F.3d at 880; Fed. R. Civ. P. 9(b).  For instance, the Complaint does not specify who originated or terminated these communications, and from where; when exactly between 1996 and 2013 Plaintiffs received fraudulent FDDs; or how the communications reached Plaintiffs beyond the general allegation that Bonus of America used "interstate wire and/or . . .

the U.S. mail." The allegations concerning FDD disclosure do not establish that any Movant committed the predicate acts of mail or wire fraud.

    **b. Plaintiffs do not allege with particularity that Bonus Building Care or Bonus of America committed mail or wire fraud by issuing a press release that was possibly picked up by third-party business publications.**

Second, Plaintiffs allege that Movants Bonus Building Care and Bonus of America committed mail or wire fraud by issuing fraudulent press releases concerning the success of its franchises. By way of example, the Complaint alleges that *Entrepreneur* magazine used this information to create and publish a "Franchise 500" list, and Plaintiffs relied on these favorable rankings in deciding to enter their franchise agreements.

The Complaint fails to allege with particularity the factual basis for this mail or wire fraud. It does not provide the contents of any communication to these publications by either Bonus Building Care or Bonus of America. The Complaint gives no indication that either Movant in any way misrepresented Bonus's business model or manipulated one of these magazines to elicit favorable press coverage. The Complaint also does not state to whom Bonus distributed the misleading information, instead theorizing that a press release available on the Internet might have made its way to these magazines; where the communication was issued or received; when the communication was issued; or how either of these two Movants released fraudulent information for third parties beyond a general allegation that the communications occurred through "interstate wire and/or . . . the U.S. mail." Consequently, the Complaint fails to properly allege that any Movant committed mail or wire fraud by releasing a fraudulent press release.

    **c. Plaintiffs' general allegations fail.**

Third, the Complaint generally alleges that Movants used the mail and wires "to

fraudulently misrepresent the true nature of" the Bonus system. Generic allegations of this sort fall well short of the bar set by Rule 9(b). *See Commercial Prop. Invs.*, 61 F.3d at 644.

The Complaint thus fails to sufficiently plead the third element of Count I.

**4. Plaintiffs have not properly pleaded that all Movants participated in predicate acts of racketeering.**

The fourth element of a § 1962(c) claim is that each Movant's racketeering activity amounted to a "pattern of racketeering activity." A "pattern of racketeering activity" is at least two, but possibly more, acts of racketeering activity within the last ten years. 18 U.S.C. § 1961(5), *construed in Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). To prove such acts of racketeering constitute a "pattern" Plaintiffs must show that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

Here, the Complaint fails to establish a pattern of racketeering activity for each Movant within the ten years before the Complaint was filed in July 2013. As explained in the preceding section, the Complaint does not establish that *any* Movant committed a predicate act. Thus, the Court cannot infer that a Movant committed two or more predicate acts, or that the predicate acts were related.

Even assuming that Movants committed some predicate acts, the Complaint generally dates the RICO enterprise back to 1996 but does not plead when each Movant would have committed a predicate act. The Court thus cannot determine that a pattern of racketeering activity existed between 2003 and 2013 or that such a pattern poses a distinct threat of continuing. Therefore, the Complaint fails to satisfy the fourth element of a § 1962(c) claim.

### 5. Plaintiffs have not properly pleaded that a Movant proximately caused Plaintiffs' injuries.

The fifth and final element of a § 1962(c) RICO claim is that a Movant proximately caused Plaintiffs' injuries through the commission of a predicate act. *Hemi Grp.*, 559 U.S. at 10–11. Here, the Complaint alleges that Plaintiffs suffered injuries to their "business and/or property" but fails to establish proximate cause for two reasons. First, the Complaint does not explain which Movants caused what injuries, instead attributing Plaintiffs' injuries to "Defendants['] racketeering activity," including being "fraudulently induced into entering Unit Franchise Agreement[s]." The Complaint lacks enough factual allegations for this statement to rise above an impermissible, "formulaic recitation of [one of] the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Second, the proximate cause of Plaintiffs' injuries must be a RICO predicate offense. As explained above, Plaintiffs failed to plead sufficiently particular factual allegations showing that any Movant committed a predicate offense. Therefore, the requisite catalyst for Plaintiffs' injuries is missing. For both of the above reasons, the Complaint fails to establish the final element of a § 1962(c) claim for every Movant.

In sum, Complaint does not satisfy all five elements of Count I as to any Movant, and so fails to state a claim upon which relief can be granted. The Court grants the motion to dismiss Count I as to all moving parties.

### C. Because the Complaint does not state a claim against any Defendant under § 1962(c), it necessarily does not state a claim under § 1962(d) for conspiracy.

The Court now turns to the second and final count of the Complaint, which alleges that Movants violated 18 U.S.C. § 1962(d). That section imposes liability on a person that conspires to violate § 1962(c) of RICO. To show that a RICO conspiracy existed, a plaintiff must establish

that at least one defendant committed an act that is "independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505–06 (2000). If no one defendant has caused injury through racketeering activity, then § 1962(d) conspiracy liability cannot attach to any defendant. *Id.* at 505.

As explained above, Plaintiff has not established that any Movant violated a substantive provision of RICO. Thus, § 1962(d) conspiracy liability cannot attach. Nor is the Court convinced that it is plausible for a *non-moving* Defendant to have violated § 1962(c), not least because no enterprise could have existed for any Defendant on the Complaint's factual allegations. *See Iqbal*, 556 U.S. at 678. Accordingly, no Defendant can establish a basis for Movants to be held liable for RICO conspiracy.

The Complaint fails to state a claim for § 1962(d) RICO conspiracy. The Court grants the motion to dismiss Count II as to all moving parties.

**Conclusion**

The Court finds that while it has jurisdiction over all moving Defendants, Plaintiffs have failed to plead a sufficient factual basis for a claim under either 18 U.S.C. §§ 1962(c) or (d). Movants' 12(b)(6) motion to dismiss is therefore GRANTED. All counts in the Complaint are DISMISSED as to all moving Defendants.

**IT IS SO ORDERED.**

Dated:   May 7, 2014                    /s/ Greg Kays
                                        GREG KAYS, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT